T.C. Memo. 2006-169

UNITED STATES TAX COURT

RICHARD D. IRVING AND CYNTHIA A. BURROUGH IRVING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1096-05.                    Filed August 16, 2006.

Richard D. Irving and Cynthia A. Burrough Irving, pro sese.

<u>Miriam C. Dillard</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined the following
deficiencies, additions to tax, and penalties with respect to
petitioners' 2000 and 2001 tax years:

| Year | Deficiency | Addition to tax Section 6651(a)(1) | Penalty Section 6662(a) |
|------|-----------|-----------------------------------|------------------------|
| 2000 | $32,133.00 | $7,473.75 | $6,426.60 |
| 2001 | 43,431.65 | -- | 8,634.19 |

Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues to be decided are: (1) Whether petitioners properly reported the gross receipts of their business; (2) whether petitioners are entitled to the business expense deductions they claimed on their returns; (3) whether petitioners are liable for tax on self-employment income pursuant to section 1401; (4) whether petitioners are liable for an addition to tax for failure to file timely pursuant to section 6651(a)(1); and (5) whether petitioners are liable for accuracy-related penalties pursuant to section 6662.

## FINDINGS OF FACT

Some of the facts in this case have been stipulated. The stipulated facts and accompanying exhibits are incorporated herein by this reference.

Petitioners are husband and wife. We hereinafter refer to Richard D. Irving, individually, as petitioner. At the time of the filing of the petition, petitioners resided in Eustis, Florida. During 2000 and 2001, petitioners operated Kingdom Kreations, an embroidery business specializing in embroidery for school uniforms. All of petitioners' business income and expenses relevant to the instant case relate to their operation of Kingdom Kreations.

On March 19, 2002, petitioners filed a joint 2000 Form 1040, U.S. Individual Income Tax Return (the 2000 tax return). On Schedule C of the 2000 tax return, petitioners reported gross receipts of $77,894 and the following business expenses:

| | |
|---|---|
| Advertising | $850 |
| Car and truck expenses | 6,890 |
| Office expenses | 3,875 |
| Rent or lease | |
|    Vehicles, machinery, & equipment | 15,400 |
| Supplies | 22,450 |
| Taxes and licenses | 100 |
| Travel, meals, and entertainment | 1,175 |
| Wages | 14,250 |
| Other expenses | 1,225 |
|   Total | 66,215 |

Accordingly, petitioners reported net profit of $11,679, representing the total income reported by petitioners on the 2000 tax return.

On April 15, 2002, petitioners filed a joint 2001 tax return (the 2001 tax return). On Schedule C of the 2001 tax return, petitioners reported gross receipts of $114,589 and the following business expenses:

| | |
|---|---|
| Advertising | $450 |
| Car and truck expenses | 5,710 |
| Office expenses | 3,650 |
| Rent or lease | |
|    Vehicles, machinery, and equipment | 26,400 |
| Supplies | 31,642 |
| Travel, meals, and entertainment | 1,572 |
| Wages | 30,650 |
| Other expenses | 950 |
|   Total | 101,024 |

Accordingly, petitioners reported net profit of $13,565, representing the total income reported by petitioners on the 2001 tax return.

During the years in issue, petitioners maintained ownership of and access to the following two bank accounts with Bank of America: (1) Account No. xxxx xxxx 6240 under the name Richard D. Irving d.b.a. Kingdom Kreations (Account A) and (2) Account No. xxxx xxxx 7849 under the names Richard D. Irving and Cynthia A. Irving (Account B). Accounts A and B are hereinafter referred to collectively as the bank accounts. Petitioners concede that they paid personal expenses from Account A during the years in issue. During 2000 and 2001, Bank of America issued monthly bank statements identifying petitioners' transactions with respect to the bank accounts, which bank statements are hereinafter collectively referred to as the bank statements.

Petitioners maintained their business records with computer software and stored the records in both electronic and paper form. Petitioners, however, lost the electronic records due to computer malfunction, and they subsequently destroyed the paper records when they ceased to operate Kingdom Kreations.[1]

---

[1]The record does not indicate the date on which petitioners' electronic records were lost, and the record does not indicate the date on which petitioners ceased to operate Kingdom Kreations.

In August of 2003, Revenue Agent Fabian A. Gomez commenced an examination of petitioners' 2001 and 2002 tax returns. Petitioners were unable to produce any business records or substantiating documents, and, therefore, Agent Gomez used the bank statements to reconstruct petitioners' income.  Agent Gomez determined petitioners' gross receipts for the years in issue by subtracting the deposits that he was able to identify as nontaxable, such as loan proceeds and transfers from other bank accounts maintained by petitioners (transfers), from the aggregate deposits for each year.  Petitioners were given the opportunity to but did not identify on the bank statements the business expenses for which they claimed deductions.  Agent Gomez, therefore, relied on his own review of the bank statements to identify business-related payments, which he allowed as business expense deductions for the years in issue.

On October 15, 2004, respondent issued petitioners a statutory notice of deficiency with respect to their 2000 and 2001 tax years.  Respondent determined that petitioners understated their gross receipts for the 2000 tax year by $37,634 and for the 2001 tax year by $47,207.[2]  For both the 2000 and

---

[2]Respondent determined the $37,634.02 understatement of gross receipts for petitioners' 2000 tax year by subtracting gross receipts as reported by petitioners ($77,894) from gross receipts as determined by Agent Gomez ($115,528.02).  Similarly, respondent determined the $47,207.73 understatement of gross receipts for petitioners' 2001 tax year by subtracting gross

(continued...)

2001 tax years, respondent allowed portions of petitioners' claimed business expense deductions for supplies and office expenses but disallowed all others.[3]  Furthermore, respondent determined that petitioners are liable for self-employment taxes of $12,424 for the 2000 tax year and $13,893.57 for the 2001 tax year.  Remaining adjustments set forth by respondent in the notice of deficiency depend on a Rule 155 computation and need not be addressed in this opinion.

Petitioner timely petitioned this Court for a redetermination of the proposed deficiencies.

OPINION

Section 61(a) defines gross income as "all income from whatever source derived," including gross income derived from

---

[2](...continued)
receipts as reported by petitioners ($114,589) from gross receipts as determined by Agent Gomez ($161,796.73).

[3]Specifically, respondent determined that petitioners overstated Schedule C business expense deductions as follows:

| | Amount of claimed deduction disallowed by respondent | |
| Claimed expenses | 2000 | 2001 |
|---|---|---|
| Advertising | $850 | $450 |
| Car and truck expenses | 6,890 | 5,710 |
| Office expenses | 3,228 | 2,983 |
| Rent or lease | 15,400 | 26,400 |
| Supplies | 18,678 | 17,031 |
| Taxes and licenses | 100 | |
| Meals and entertainment | 1,175 | 1,573 |
| Wages | 14,250 | 30,650 |
| Other expenses | 1,225 | 950 |
| Total | 61,796 | 85,747 |

business.   Taxpayers are required to maintain books and records that are sufficient to enable the Commissioner to determine their correct tax liability.   Sec. 1.6001-1(a), Income Tax Regs.

The Commissioner may use the bank deposits method to compute taxpayers' income in the absence of substantiating business records.   Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977).   Bank deposits are prima facie evidence of income.   Id.   The bank deposits method of reconstruction assumes that all of the money deposited into a taxpayer's account is taxable income unless the taxpayer can show that the deposits are not taxable.   DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).   The Commissioner, however, must take into account any nontaxable items or deductible expenses of which the Commissioner has knowledge.   Id.

In the instant case, section 7491(a) does not shift the burden of proof to respondent because petitioners failed to maintain records or comply with substantiation requirements as required under section 7491(a)(2)(A) and (B).   Consequently, petitioners bear the burden of proving that respondent's determination of income based on the bank deposits method is erroneous.   Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioners do not dispute respondent's use of the bank deposits method of reconstruction and do not allege any specific error in respondent's computations. Rather, we understand petitioners to contend that they maintained business records during the years in issue that were subsequently lost or destroyed, that the 2000 and 2001 tax returns accurately reported petitioners' income and expenses for the years in issue in accordance with their lost or destroyed business records, and that respondent's determinations are therefore erroneous.

The record demonstrates that petitioners failed to produce books and records from which respondent could determine their tax liability for the years in issue. Consequently, we conclude that respondent's use of the bank deposits method was proper. See Estate of Mason v. Commissioner, supra. The record further demonstrates that respondent properly computed the gross receipts and business expenses for petitioners' 2000 and 2001 tax years under the bank deposits method, as discussed below.

With respect to petitioners' gross receipts, the parties stipulated that deposits into the bank accounts during 2000 totaled $222,467.13, including $90,804.03 of nontaxable items and $16,135.08 of transfers.[4] Additionally, the parties stipulated that deposits into the bank accounts during 2001 totaled

---

[4]We note that such "transfers" are nontaxable and could have been grouped together with the other nontaxable items.

$187,331.24, including $14,969.51 of nontaxable items and $10,565 of transfers. Based upon the amounts stipulated, respondent determined that petitioners had gross receipts of $115,528.02 in 2000 and that petitioners had gross receipts of $161,796.73 in 2001.[5] As noted above, petitioners reported gross receipts of $77,894 in 2000 and $114,589 in 2001. In light of the parties' stipulations, we conclude that petitioners have failed to meet their burden of proving that respondent erred in determining that petitioners understated their 2000 gross receipts by $37,634.02 and their 2001 gross receipts by $47,207.73.

With respect to petitioners' business expenses, respondent allowed deductions of $4,419 for the 2000 tax year and $15,278 for the 2001 tax year, based upon the amounts that Agent Gomez identified from the bank statements as business-related payments. Although petitioners claimed business expense deductions of $66,215 for the 2000 tax year and $101,024 for the 2001 tax year, petitioners did not identify such expenses from the bank statements when Agent Gomez provided them with the opportunity to do so. At trial, petitioners were unable to provide any credible

---

[5]Respondent's determination that petitioners had gross receipts of $115,528.02 in 2000 represents the total deposits into accounts A and B during 2000 ($222,467.13), less nontaxable items ($90,804.03) and transfers ($16,135.08). Similarly, respondent's determination that petitioners had gross receipts of $161,796.73 in 2001 represents the total deposits into accounts A and B during 2001 ($187,331.24), less nontaxable items ($14,969.51) and transfers ($10,565).

evidence to substantiate the claimed business expense deductions disallowed by respondent. Although petitioners contend that they incurred significant labor expenses during the years in issue, they were able to provide no more than the names of four employees and an estimate of weekly payments made to such employees.[6] The Court may estimate the proper amount of deductible expense when a taxpayer establishes that he paid or incurred the expense but does not establish the amount of the deduction. Boyd v. Commissioner, 122 T.C. 305, 320 (2004). For such an estimate to be proper, however, the record must evidence that the taxpayer paid or incurred a deductible expense at least of the amount allowed. Id. The record in the instant case provides no such evidence. Consequently, we conclude that petitioners have failed to meet their burden of proving that respondent erred in disallowing claimed business expense deductions of $61,796 for petitioners' 2000 tax year and $85,746 for petitioners' 2001 tax year.

Section 1401 imposes a percentage tax on the self-employment income of every individual. Self-employment income is defined as "the net earnings from self-employment derived by an individual * * * during any taxable year". Sec. 1402(b). The term "net earnings from self-employment" is defined as "the gross income

---

[6]Petitioner estimated the amounts paid to each of the four employees per week but provided no evidence as to the number of weeks worked by such employees.

derived by an individual from any trade or business carried on by such individual, less the deductions * * * which are attributable to such trade or business". Sec. 1402(a). Petitioners have made no contention and offered no evidence as to whether they are liable for self-employment taxes during the years in issue. The record, however, demonstrates that petitioners' gross receipts during 2000 and 2001 were attributable to their business, Kingdom Kreations. Consequently, we conclude that respondent correctly determined that petitioners had self-employment income of $111,109 for the 2000 tax year and $146,518 for the 2001 tax year, representing petitioners' gross receipts less business expense deductions for each respective tax year. Accordingly, we hold that petitioners are liable for the corresponding self-employment taxes as determined by respondent with respect to the years in issue.

We now turn to the issues of whether petitioners are liable for the addition to tax for failure to timely file pursuant to section 6651(a)(1) with respect to petitioners' 2000 tax year and whether petitioners are liable for section 6662 accuracy-related penalties for the years in issue. Section 7491(c) provides that respondent bears the burden of production with respect to the liability of any individual for any addition to tax or penalty. Consequently, respondent must produce sufficient evidence to demonstrate that the addition to tax for failure to file timely

and the accuracy-related penalties are appropriate.  See Higbee
v. Commissioner, 116 T.C. 438, 446 (2001).  Once respondent meets
his burden of production, petitioner must produce sufficient
evidence to persuade the Court that respondent's determination is
incorrect.  Id. at 447.

Section 6651(a)(1) provides for an addition to tax of 5
percent of the tax required to be shown on the return for each
month or fraction thereof for which there is a failure to file,
not to exceed 25 percent.  The addition to tax for failure to
file a return timely will be imposed if the return is not filed
timely unless the taxpayer shows that the delay was due to
reasonable cause and not willful neglect.  Sec. 6651(a)(1).  In
the instant case, the parties stipulated that petitioners filed
the 2000 tax return on March 19, 2002.  Consequently, we must
determine whether petitioners have shown that the delay was due
to reasonable cause and not willful neglect.[7]

A delay is due to reasonable cause if the taxpayer exercised
ordinary business care and prudence and was nevertheless unable
to file the return within the prescribed time.  Sec. 301.6651-
1(c)(1), Proced. & Admin. Regs.  "[W]illful neglect" is defined

_____

[7]We note that the parties have made no contentions and
offered no evidence as to whether petitioners filed a written
statement with respondent pursuant to sec. 301.6651-1(c)(1),
Proced. & Admin. Regs.

as a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).

In the instant case, the record demonstrates that petitioners maintained business records that ultimately provided the financial information reported on petitioners' 2000 and 2001 tax returns. Prior to filing the 2000 tax return, however, petitioner suffered a debilitating physical ailment, and petitioner Cynthia A. Burrough Irving suffered a miscarriage. To access their electronically stored business records and file the 2000 tax return, petitioners sought and received assistance from their friend, Scott Yusem. Mr. Yusem testified credibly that he helped petitioners file their tax returns because he "had some knowledge of accounting from running [his own] business" and petitioners lacked the resources to hire a professional tax-preparer. On the basis of the foregoing, we conclude that petitioners' delay in filing the 2000 tax return was due to reasonable cause and not willful neglect. Accordingly, we hold that petitioners are not liable for the asserted section 6651(a)(1) addition to tax for failure to file timely with respect to their 2000 tax year.

Section 6662(a) imposes a 20-percent accuracy-related penalty with respect to the portion of any underpayment of tax attributable to a substantial understatement of income tax. An "understatement" is the excess of the amount of tax required to

be shown on the return over the amount of tax that is actually shown on the return. Sec. 6662(d)(2)(A). A "substantial understatement" of income tax exists if the amount of the understatement for the taxable year exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000.[8] Sec. 6662(d)(1)(A). On the basis of the record in the instant case, we conclude that each of the underpayments for petitioners' 2000 and 2001 tax years is attributable to a substantial understatement of income tax.

Notwithstanding section 6662(a), section 6664(c)(1) provides that the accuracy-related penalty shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith within the meaning of section 6664(c)(1) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the

---

[8]Sec. 6662(d)(2)(B) provides that the amount of an understatement is reduced by any portion for which (1) there was substantial authority for the taxpayer's treatment, or (2) the relevant facts affecting the item's tax treatment were adequately disclosed and there is a reasonable basis for the tax treatment. In light of our holding below that there was reasonable cause for petitioners' position and that petitioners acted in good faith, we need not decide whether petitioners' understatement is properly reduced pursuant to sec. 6662(d)(2)(B).

taxpayer's effort to assess his proper tax liability for the year.  Id.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Id.

In the instant case, the record demonstrates that petitioners used computer software to maintain business records for Kingdom Kreations during the years in issue and that they delegated responsibility for maintaining the business records to employee Monica Mann, who was unavailable to testify.  As noted above, petitioners required the assistance of Mr. Yusem to access their electronically stored business records and file their 2000 and 2001 tax returns.  Mr. Yusem testified credibly that the amounts reported on petitioners' tax returns were taken directly from petitioners' electronic records.  Furthermore, Agent Gomez testified that petitioner was "very cooperative" during the audit.  Based on the foregoing, we are satisfied that petitioners maintained business records to the best of their ability and that the information reported on their 2000 and 2001 tax returns reflects the amounts recorded in such business records.  We conclude that petitioners made a substantial effort to assess their proper tax liabilities for the years in issue and, consequently, that petitioners acted with reasonable cause and in

good faith for purposes of section 6664(c)(1). Accordingly, we hold that petitioners are not liable for section 6662 accuracy-related penalties with respect to their 2000 and 2001 tax years.

To summarize, we hold that petitioners are liable for a deficiency of $32,133 with respect to their 2000 tax year and a deficiency of $43,431.65 with respect to their 2001 tax year. However, we hold that petitioners are not liable for the addition to tax and accuracy-related penalties determined by respondent.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>